**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLARICE FELDMAN, )<br>4455 29th Street, N.W., )<br>Washington, DC 20008, )<br>           )<br>           Plaintiff, )<br>   v.       )<br>           ) Civil Action No.<br>MURIEL E. BOWSER, in her official capacity )<br>as Mayor of the District of Columbia, )<br>1350 Pennsylvania Avenue, N.W., )<br>Washington, DC 20004, )<br>           )<br>      and  )<br>           )<br>JEFFREY S. DeWITT, in his official )<br>capacity as Chief Financial Officer for )<br>the District of Columbia, )<br>1350 Pennsylvania Avenue, N.W., )<br>Washington, DC 20004, )<br>           )<br>           Defendants. )<br>           ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Clarice Feldman, by and through her attorneys, brings this action for declaratory and injunctive relief against Defendants Muriel E. Bowser, in her official capacity as Mayor of the District of Columbia, and Jeffrey S. DeWitt, in his official capacity as Chief Financial Officer for the District of Columbia. As grounds therefor, Plaintiff alleges as follows:

**PARTIES**

1. Plaintiff Clarice Feldman is a taxpayer of the District of Columbia ("District"), residing at 4455 29th Street, N.W., Washington, DC 20008. She has been a District taxpayer and has resided at that address since 1979. As a District taxpayer, Plaintiff has the right to initiate a suit to prevent the unlawful expenditure of local taxpayer funds. *See District of Columbia*

*Common Cause v. District of Columbia*, 858 F.2d 1, 10 (D.C. Cir. 1988); *see also Ehm v. San Antonio City Council*, 269 Fed. Appx. 375 (5th Cir. 2008).

2.  Muriel E. Bowser is the Mayor of the District of Columbia ("Mayor").

3.  As Mayor, Defendant Bowser is the "the chief executive officer of the District government," and is "responsible for the proper execution of all laws relating to the District." D.C. Code § 1–204.22. 21. In particular, Defendant Bowser is in "charge of the administration of the financial affairs of the District" except to the extent responsibilities have been assigned to the Chief Financial Officer ("CFO"). *Id.* at § 1–204.48(a). Thus, she is "responsible for all financial transactions," has "custody of all public funds belonging to or under the control of the District," and is required to apportion "all appropriations and funds made available during the fiscal year for obligation." *Id.* at § 1–204.48(a)(1), (7), (9). She is also required to transmit the federal portion of the budget to the President for submission to Congress. *Id.* at § 1–204.46(a).

4.  On July 8, 2015, Defendant Bowser submitted the District's Fiscal Year 2016 Budget Act of 2015 to President Barack Obama. In the transmittal letter, Defendant Bowser stated, "This is the first time we have passed a budget under the provisions of our Budget Autonomy Act. Unlike previous Budget Request Acts, this year's act has been reviewed and voted on twice by our Council." In addition, Defendant Bowser wrote, "We recognize the continued need for an appropriation of the federal payment portions of our budget but believe that the provisions relating to the local portion of our budget will go into effect without a separate appropriation following a 30 legislative-day period of passive Congressional review."

5.  Defendant Jeffrey S. DeWitt is the CFO for the District of Columbia.

6.  As CFO, Defendant DeWitt is required to certify and approve payment "of all bills, invoices, payrolls, and other evidences of claims, demands, or charges against the District

2

government, and determin[e] the regularity, legality, and correctness of such bills, invoices, payrolls, claims, demands, or charges." D.C. Code § 1–204.24d(16); *see also id.* at § 1–204.24d(21) (requiring the CFO to "[a]dminister[] the centralized District government payroll and retirement systems")

7. Defendant DeWitt is also specifically required to prepare "under the direction of the Mayor . . . the budget for submission by the Mayor to the Council and to the public and upon final adoption to Congress and to the public." *Id*. at § 1–204.24d(26); *see also id.* at § 1–204.24d(2) (charging the CFO with "preparing the 5-year financial plan based upon the adopted budget for submission with the District of Columbia budget . . . to Congress"); *Id*. at § 1–204.24d(25) (requiring the CFO to "[p]repar[e] fiscal impact statements . . . on legislation").

## JURISDICTION

8. The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9. The Court has authority to issue a declaratory judgment and "further necessary or proper relief" pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

10. Venue is proper in the Court because the actions of Defendants complained of herein have occurred and shall occur in this district. 28 U.S.C. 1391(b).

## FACTUAL ALLEGATIONS

11. Article 1, Section 8, Clause 17 of the U.S. Constitution vests Congress with the power "to exercise exclusive legislation in all Cases whatsoever" over the District of Columbia.

12. In 1973, Congress enacted the District of Columbia Self-Government and Governmental Reorganization Act ("the Home Rule Act"), later codified as D.C. Code §§ 1-

201.01, *et seq*. The Home Rule Act constitutes a limited delegation of Congress' authority over the District to the District's residents. *Id.* at § 1-201.02.

13. Among the provisions of the Home Rule Act is the Charter of the District of Columbia ("the Charter"), which "establish[es] the means of governance of the District" and sets forth the basic organizational structure of the District's government. D.C. Code § 1-203.01. The Charter is codified at D.C. Code §§ 1-204.1 through 1-204.115.

14. The Charter mandates that each year the Mayor prepare and submit a proposed budget to the Council of the District of Columbia ("Council"). *Id*. at § 1-204.42.

15. For purposes of both the Charter and the Home Rule Act, the term "budget" is defined as "the entire request for appropriations and loan or spending authority for all activities of all agencies of the District financed from all existing or proposed resources and shall include both operating and capital expenditures." *Id*. at § 1-201.03(15).

16. The Charter also mandates that the Council adopt a budget for the District, by majority vote or, if the Mayor disapproved the budget adopted by the Council, by a two-thirds majority vote, within a certain period of time after receipt of the Mayor's budget proposal. *See*, *e.g.*, *id*. at § 1-204.46(a).

17. Until a purported amendment in 2013, the Charter further mandated that the Mayor submit the District's budget, as adopted by the Council, to the President for transmission to Congress. Congress, in turn, considered the District's budget as part of the annual federal appropriations process.

18. In other words, enactment of the District's annual budget required not only approval by majority or two-thirds vote of the Council, but also an affirmative appropriation passed by both Houses of Congress and presented to the President for signing. Congress retained

full authority to amend, adopt, or ignore the budget adopted by the District, on an open-ended timeframe, with or without consulting with the District.

19. With certain exceptions not relevant here, the Charter expressly provides that "no amount may be obligated or expended by any officer or employee of the District of Columbia government unless such amount has been approved by Act of Congress, and then only according to such Act." *Id.* at § 1-204.46(c).

20. The Home Rule Act prohibits the District from amending certain portions of the Charter, including the Charter's budget provisions. *Id.* at §§ 1-203.03(d), 1-206.02(a)(3), 1-206.03(a), and 1-206.03(e). Only an Act of Congress can amend these portions of the Charter.

21. On December 18, 2012, the Council passed the Budget Autonomy Act, which was signed by then-Mayor Vincent C. Gray on January 18, 2013. Because the Budge Autonomy Act purported to amend the Charter, it was required to be ratified by the District's voters in a referendum in order to become law. The District's voters ratified the Budge Autonomy Act in an April 23, 2013 referendum.

22. The Budget Autonomy Act purports to make two significant changes to the Charter. First, it divides the District's budget into two components – a "local portion" and a "federal portion" – and changes the process by which the budget becomes law. Although the terms "local portion" and "federal portion" are not defined in either the Budget Autonomy Act or the Home Rule Act, it appears that "local portion" refers to that segment of the District's budget derived from local sources, including District of Columbia income, sales, and property tax revenues and fees. Approximately two-thirds of the District's budget stems from such local revenues and fees.

23. Instead of the Mayor submitting the entire budget to the President for transmission to Congress and both Houses of Congress passing an appropriation for presentment to the President, the Budget Autonomy Act calls for the Council Chairman to submit the "local portion" of the budget to the Speaker of the House of Representatives. If Congress does not pass a joint resolution disapproving the "local portion" of the budget within 30 days, it becomes law. Only the "federal portion" of the budget is submitted to the President – by the Mayor – for transmission to Congress. The "federal portion" only becomes law when both Houses of Congress pass an appropriation that is presented to the President for signing.

24. Second, pursuant to this revised process, the Budget Autonomy Act purportedly grants the District authority to incur obligations and expend local tax and fee revenue without an appropriation passed by both Houses of Congress and presented to the President for signing.

25. After the Budget Autonomy Act took effect, the District's Attorney General issued a formal opinion advising then-Mayor Gray that he should not enforce the law because it violated the Home Rule Act and therefore was unlawful.

26. On the advice of the Attorney General and on their own accord, then-Mayor Gray and Defendant DeWitt notified the Council that they believed the Budget Autonomy Act to be unlawful and would not enforce it.

27. On April 17, 2014, the Council filed suit, seeking declaratory and injunctive relief against then-Mayor Gray and Defendant DeWitt in their official capacities. Specifically, the Council sought a declaration that the Budget Autonomy Act is valid and an injunction compelling the enforcement of the law.

28. The parties subsequently cross-moved for summary judgment, and, on May 19, 2014, the U.S. District Court for the District of Columbia ("District Court") found the Budget Autonomy Act to be unlawful and permanently enjoined all parties from enforcing it.

29. The Council immediately appealed the District Court's ruling to the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). After briefing and oral argument, but prior to an opinion being issued by the D.C. Circuit, Muriel E. Bowser was elected Mayor of the District, sworn into office, and substituted in as an appellee in place of Mayor Gray.

30. Upon being substituted in, on February 23, 2015, Mayor Bowser advised the D.C. Circuit that, contrary to the District Court's ruling, she believed the Budget Autonomy Act to be valid, and, absent a judgment restraining her actions, intended to comply with its requirements. On March 24, 2015, Mayor Bowers filed a motion to dismiss the appeal for mootness and requested that the appellate court vacate the District Court's judgment so that she could adhere to the Budget Autonomy Act.

31. On May 27, 2015, the D.C. Circuit dismissed the appeal and vacated the District Court's judgment on mootness grounds.

32. Although the only court to rule on the merits of the Budget Autonomy Act found the law to be unlawful, the District enacted its Fiscal Year 2016 Budget through the process established in the Budget Autonomy Act.

33. The Fiscal Year 2016 Budget Request Act of 2015 ("FY16 Budget Request"), which includes both the federal and local portions of the District's budget, was introduced on April 2, 2015. The first reading occurred on May 27, 2015. The final reading occurred on June 10, 2015.

34. The FY16 Budget Request was submitted to the Mayor on July 9, 2015 and approved by her that day.

35. Pursuant to the Budget Autonomy Act, the Mayor submitted the entire FY16 Budget Request to the President for him to transmit to Congress the federal portion of the FY16 Budget Request.

36. On July 17, 2015, pursuant to the Budget Autonomy Act, the Council Chairman transmitted the local portion of the FY16 Budget Request to the Speaker of the House of Representatives and the President of the Senate.

37. Congress did not pass a joint resolution within 30 days of July 17, 2015 disapproving of the local portion of the FY16 Budget Request.

38. The local portion of the FY16 Budget Request, therefore, purportedly became effective on September 29, 2015.

39. Since Fiscal Year 2016 began on October 1, 2015, the District has been incurring obligations and expending monies, including local taxpayer funds, pursuant to the FY16 Budget Request, that have not been appropriated by Congress and presented to the President for signing.

### COUNT ONE
### (Taxpayer Action – Declaratory and Injunctive Relief)

40. Plaintiff realleges paragraphs 1-39 as though fully restated herein.

41. The Budget Autonomy Act violates the Home Rule Act and is illegal, unlawful, and *ultra vires*.

42. By complying with the Budget Autonomy Act, Defendants have caused and are causing the District to incur illegal, unlawful, and *ultra vires* obligations of local taxpayer funds

and have caused and are causing the District to make illegal, unlawful, and *ultra vires* expenditures of local taxpayer funds.

43. Defendants' illegal, unlawful, and *ultra vires* actions have injured and are injuring Plaintiff irreparably in her interests as a taxpayer and will continue to injure Plaintiff irreparably unless and until Defendants are enjoined from incurring such obligations and making such expenditures or otherwise ordered to cease and desist.

44. Plaintiff has no adequate or alternative remedy at law.

45. Defendants' illegal, unlawful, and *ultra vires* actions have injured and are injuring Plaintiff in a manner that warrants relief.

**WHEREFORE**, Plaintiff prays that the Court: (a) declare the Budget Autonomy Act to be unlawful; (b) declare the local portion of the FY16 Budget Request to be unlawful; (c) enjoin Defendants from incurring further illegal, unlawful, and *ultra vires* obligations of local taxpayer funds or making further illegal, unlawful, and *ultra vires* expenditures of local taxpayer funds on the local portion of the FY16 Budget Request; (d) award Plaintiff reasonable attorneys' fees and costs; and (e) order such other and further relief as the Court finds just and equitable.

Dated:  November 6, 2015                                         Respectfully submitted,

*/s/ Michael Bekesha*
Michael Bekesha
D.C. Bar No. 995749
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Phone:  (202) 646-5172

*Counsel for Plaintiff Clarice Feldman*